NEW-YORK.
March, 1823.

The People
*vs.*
Charles Davis

[This case was kindly furnished the Editor by Mr. Rogers.]

---

### The People *vs.* Charles Davis.  *Arson.*

CHARLES DAVIS, a young negro lad, about 16 years of
age, was put to the bar, charged with arson, in setting
fire to the barn of Mr. William Good, at the corner of the
3d Avenue and Stuyvesant lane, on the 12th of February,
1823.

Where the
punish m e n t
of a crime is
very severe,
slight circum-
stances will
be insufficient
to convict.

The circumstances of the case, as disclosed by the tes-
timony of Mr. Good and others, were as follows :—The
prisoner had been hired as a laborer by Mr. Good, and
had served him faithfully since September last, that on
the 12th of February, in the morning between 7 and 8
o'clock, he told Mr. Good that his brother had died the
night before, and asked leave to attend his funeral. Mr.
Good gave him money, and he went away and returned
early in the evening ; went out again for a few minutes,
and came in and went to bed.

In a very short time after, the fire broke out in the sta-
bles ; the negro was waked up and assisted to put out the
fire ; they were successful in extinguishing it, and Mr.
Good and his family retired to bed, leaving the negro in
the barn, and requested the watchman who was stationed
in the neighborhood to pay particular attention to the
premises. In about one half an hour the barn was again
discovered to be on fire, and was entirely consumed.

NEW-YORK, March, 1823.

The People, vs. CharlesDavis

It was proved by Mr Good and others that Charles was an industrious boy, that during his service with him, he had behaved himself very well, had had no quarrel with Mr. Good, or with any of his family ; was temperate in his life, and orderly in his conduct.

It was also proved that at the first fire he carried water and assisted in putting it out ; and that, after it was extinguished, he remained in the barn after the family had retired to bed, and until the barn was again on fire.

It was also proved that after Mr. Good and the people thought they had extinguished the fire, it was found still burning under some bags of cut straw that lay in the barn, and this occurred two or three times before the fire was finally put out.

*E. Barns* and *J. D. Wheeler*, assigned by the Court counsel for the prisoner.

The Court observed to the jury that the crime charged upon the prisoner was one of a very serious nature; the punishment was very penal by our statute, and required satisfactory proof. In this case the evidence was of that kind denominated in law presumptive evidence ; and they intimated their opinion, that the circumstances were of too slight a nature to warrant a conviction, that in cases where the penalty was so very severe, the proof ought to be satisfactory. It may be probable that some third person threw combustible materials into the barn ; and that after Mr. Good and his people supposed they had put the fire out, there were some sparks left that shortly after lighted up into a flame. This is the most charitable conclusion. Inferences from facts are always to be taken in favor of the prisoner ; and in matters of doubt, presumptions of law and fact are to operate in his favor ; and in this case they are violent ; he had no quarrel with

Mr. Good, no difference with any of the family ; he. was not intemperate, or addicted to any vicious habits, &c. In such cases, the absence of positive proof, or strong presumptive testimony, is material and indispensable.

NEW-YORK,
March, 1823.

The People
vs.
Chas. Davis.

The Jury returned a verdict of not guilty for the prisoner.

*NOTE. Arson is defined to be "the malicious and voluntary (or wilful) burning the house of another." 3 Inst. 66. 1 Hale, 566. East, C. L. p. 1015. 4 Blac. Comm. p. 220.

A malicious and voluntary burning must not be the effect of carelessness or negligence, for no malice is implied from those acts. 1 Hale, 569, 570, The 6 Ann, C. 31. makes it, however, a misdemeanor punishable by fine and imprisonment. Nor will the burning be considered voluntary and malicious in the performance of an unlawful act, if accidental: as shooting at poultry or game, the property of a neighbor. But the words malicious and voluntary are not confined to the injury of a particular person or persons, but are construed to apply to all evil and mischievous acts, evincing a settled and general intent to the damage of individuals. 1 Hale, 569. If a man has a design to burn one house, and by accident the flames destroy another, instead of that against which his contrivance was directed, he will be guilty of maliciously burning the latter. Ibid. 3 Inst. 67. 1 Hawk. C. 39. And if one command another to burn the house of J. S., and he do so, and the fire thereof burn another house, the commander is accessary to the burning of such other house. Plowd. 475.

*What is a malicious and voluntary burning.*

In East, C. L. p. 1031, it is said "Hence it appears, that though the primary intention of the party were only to burn his own house, yet "if in fact others were burnt, being adjoining, and in such situation as "that the fire must in all probability reach them, the intent being unlawful and malicious, and the consequence immediately and necessarily flowing from the original act done, it is felony." See Isaac's case. Ibid.

In Breeme's case it was decided, after argument, that if a tenant set fire to the house of his landlord, before the tenancy expires, he is not guilty of Arson. 1 Leach, 209. To set fire to a quantity of paper

NEW-YORK, March, 1823.

The People
vs.
Chas. Davis.

in a paper-mill, whereby the paper is wholly consumed and the mill not burnt, is not Arson.  1 Leach, 49.

The statute of this State describes the offence to be "*wilfully* burning "any inhabited dwelling-house" or *wilfully* burning any dwelling "house uninhabited, or any house of public worship, or other public "building, or any barn, or any grist mill.  Rev. L. p. 407.

To set fire, designedly. to a house then inhabited as a dwelling house, so that it is completely ignited, is the *wilful* burning of an inhabited dwelling-house, within the meaning of the statute.  16 Johns. Rep. p. 203. City Hall Rec. vol. 4. p. 78, 79.

But it is not arson for a man to set fire to his own house and burn it, even in a populous city.  But it is a great misdemeanor.  Ibid. vol. 2. p. 85.

Setting fire to a prison by a prisoner, for the purpose of escape, does not amount to the crime of arson.  18 Johns. Rep. p. 115.

Nor is it the *wilful burning of an inhabited dwelling-house.*  Ibid.

To constitute such burning *wilful,* the prisoner must set it on fire for the purpose of consuming the building.  City Hall Rec. vol 6, p. 71.  See Van Blarcum's case.  2 Johns. Rep. p. 105.

The word "*wilfully*" in the statute seems to imply, and is used in the same sense as the words "voluntary" and "maliciously" in the English statutes.  The same evidence is required to convict.  The same rules of construction prevail.  The decisions in Great Britain are therefore authority here.

What is the house of another.

At common law it was held, that not only the dwelling-house, but also out-houses, that are parcel of the dwelling-house, and within the curtilage, although not contiguous, were the subjects of arson.  1 Hale, 56.  And it has always been held to be arson, to burn a barn filled with hay or corn, even where it stood a great distance from the house. 3 Inst. 69.  To set fire to one's own house, whereby another is consumed, is arson.  Cro. Car. 377,  In the definition of arson, the mansion house is not only included, but it extends "to the outset also, as "barn, stable, cow house, sheep house, dairy house, mill house and "the like parcel of the mansion house."  But they must be parcel of the mansion, although it is not necessary they should be under the

same roof. 1 Hale, 560. 1 Hawk. Ch. 38.  If the out houses be ad-
joining to the mansion house, though there be no common enclosure
or curtilage, they are still considered as parts of the mansion.  1
Hale, 559.    The indictment need not alledge the burning of a *man-*
*sion house,* but only of a *house.*    East. C. L. p. 1020. 4 Blac. Comm,
221.   It must be the house of another, although it is unnecessary he
should have the legal title or entire interest; a lawful possesion is
sufficient.   Cro. Car. 376. Chitty, C. L. vol. 3, p. 532.   It has been
decided that arson cannot be committed by setting fire to premises
which a man enjoys under a lease for years.   Cro. Car. 376.   Or
even as tenant under an agreement for a lease.   1 Leach, 220.   Nor
can he be guilty of arson of the premises while tenant from year to
year.   But one entitled to dower, out of a dwelling house let to an-
other person, if she burns it through malice, she will be guilty of ar-
son.   Fost. 113.   And where a pauper was suffered to reside in a
house free of rent it was held he might be guilty of arson in burning
it, notwithstanding his possession.   1 Leach, 246, *in notis.*
The statute, 43 Geo. 3. C. 58, made the burning one's own house arson,
but it does not extend to this country; nor have we a similar statute.
It is here merely a misdemeanor at common law.

What shall be deemed a " house," or the house of another has never been
settled in this country,    Upon this point, recourse must be had to
the English statutes and the decisions of their courts of justice.   Our
statute, indeed, enumerates " inhabited dwelling houses," and " dwel-
" ling houses uninhabited :" " house of public worship, or other public
" building " and " barn or grist-mill."   No mention is made of a saw-
mill, or a fulling-mill, or many other mills but simply of a " grist-
" mill."   And it is very customary in the countrv for workmen to
sleep in establishments for dressing cloth, &c , and yet setting them
on fire is only a misdemeanor at common law.   A woollen or cotton
factory is equally unprotected.   It is neither an " inhabited dwel-
" ling house," nor " a dwelling house uninhabited."   And is there-
fore, not within the statute making the burning of it arson.

Arson was always a felony at common law.   It was, however, made
treason by the 8 Hen. 6. C. 6; but this statute was soon after repeal-

NEW-YORK,

ed, and arson became felony again by I Ed. 6. C 12., and by the statute, 9 Geo, 1. C. 22. Clergy is taken away from principals and accessaries in almost every case. .

The statute of this State makes a material and important distinction between the punishment of arson of an "inhabited dwelling house," and an "uninhabited one." The punishment for the first crime is death. But arson of uninhabited dwelling house, is subject to imprisonment for years not exceg fourteen.

What a burning.

It is necessary there should be an actual burning of the house, but it is unnecessary any part of it should be entirely consumed, or even that the fire should have any continuance, but be put out, or go out of itself. 3 Inst. 66. 1 Hale, 568. 1 Hawk. ch. 39. 4. Black. Comm. 222. "House burning, which is felony at common law, must be a mali-"cious, voluntary, and actual burning; not putting fire only into a "house or any part of it without burning; but if part of the house is "burned, or if the fire doth burn, and then goeth out of itself, it is "felony. The words are *incendit et combussit;* but, if he had burned "part of the house, and the fire is quenched, or goes out before the "whole house is burned, it is felony." If fire be thrown into a house in order to consume it, and no part of it is injured, the offence is no felony. Ibid.

As to what burning of a house amounts to arson, see the following authorities: Inst. 66 . 1 Hawk. P. C. chap. 39.§ 4; 2 Inst. 188; Jac. Law Dict. p. 132. Dalt. Jus. chap. 105; East. C. L. p. 1020; City Hall Rec. vol. 2, p. 85. vol 4, p. 78, 79, vol. 5, p. 71.